We move to the 5th case this morning, or rather the 5th case this morning, United States v. Cook May it please the court, my name is Jim Walrath, I appear here for Anthony Cook, the appellant The issue I want to highlight this morning is whether the district court erred when, as part of its calculation of Mr. Cook's sentence, when it applied a two-level enhancement based on a finding that the check-cashing business, which was the subject of the robbery that Mr. Cook participated in, whether that check-cashing business constituted, I'll put it in quotes for a minute, a financial institution within the meaning of the United States In short, I'll refer to the robbery applicable guideline as 1.1, the other guideline is applicable to larceny offenses, and I'll refer to that as 1.3 for the sake of shortness The district court found that 1.3 applied to the facts in Mr. Cook's case, and the difference that it made is this for the sentencing outcome By applying that two-level enhancement, it moved his sentencing guideline range to level 24 instead of level 22, and given the calculations that then followed from the level 24 total offense level with his criminal history background, the court imposed a 60-month sentence, but if level 22, yes it was, it was 17 months below the minimum for the guideline The minimum at a level 24 is, according to my chart, the minimum number of months would be 77, the range for a level 24 is 77 to 96, but he did receive a 60-month sentence on that robbery count And that was below also the range if it had been offense level 22? No, excuse me, yes, it would have been below that as well, yes, because calculating that, that's at 63 to 78, yes your honor But my point is the court, and the court laid out, I don't have the page cite for me now to the record of the sentencing, but the court did take into account a number of background features about Mr. Cook and made reference to the fact of the nature of his participation in this offense, and that, it appears to me, led to the court feeling it was within its discretion to impose a below guideline sentence Which, in other words, I'm suggesting that the court, had it looked at it differently at level 22 rather than level 24, the outcome, instead of being at 60 months, would have been 14 months lower Below 60 months for an armed robbery involving physical restraint with more than $300,000 taken, is that right? There was more than $300,000 in the robbery, yes That would be an extraordinary sentence I'm sorry, your honor That would be an extraordinary sentence below 60 Well, the court was also aware that the defendant was being held accountable for the brandishing that occurred by another party to the offense And I think that played a factor in the court's analysis as well Now, I'd like to offer five reasons why guideline 1.3 did not apply, does not apply in these circumstances Basically, the court has before, from what I can tell from the research that I've done, a rather unique issue Because if the court looks at, and using Westlaw, for example, there are no cases in the Seventh Circuit that I'm aware of, at least from my Westlaw's research, that shows any application of this guideline to a check-cashing business But, in fact, I find no armed robbery cases in the Seventh Circuit that have involved check-cashing businesses But we're here to determine whether, in essence, whether this kind of retail establishment, a check-cashing business, falls within that definition 1.3, the first reason I'd like to advocate that this is an overly expansive application My argument would go to, in the general application principles of the guidelines themselves, at 1.B.1, there's a statement as follows in the application notes Definitions of terms also may appear in other sections Such definitions are not designed for general applicability Instead, applicability must be determined on a case-by-case basis I offer that point because the government, maybe today and previously in the case, has argued, well, the way to inform what the 1.3 financial institution term means is to look at the larceny 1.3 guideline definition, where there is a very detailed, very long definition of what a financial institution is under the larceny guideline There is no such comparable definition under 1, I'm sorry, I may have substituted the wrong guideline numbers But my point is that the robbery guideline 1.3 has no comparable lengthy definition as you find in 1.1 And the first principle in 1.B.1 of the commentary to the guidelines says you don't look at definitions in another guideline for general applicability How about just looking at the title of the outfit he robbed? I beg your pardon? What was the name of the organization he robbed? The embarrassing fact in this case is that the name of the business was the Community Financial Services Center We're involved in sentencing and we're spending more time regarding sentencing than was probably spent on the trial of this case And as Judge Hamilton pointed out, even the guidelines, well, I'm sorry, you're doing your job, I'm just ranting about the guidelines But this case is not about whether Anthony Cook had reason to think he was walking into a place that was doing financial business This case is about whether that guideline that cabins the meaning of financial institution as it relates to the robbery guideline Is cabined by the other reference, is my argument, the other reference to post offices Those are the two words that we've got to work with And as I pointed out in my briefs and I'll state again today And as this court has said in the Commodity Futures case that's cited in our briefs And in my opening brief at pages 17 to 18 The meaning of the term, in that case, financial institution, by the way It gets more precise meaning from the neighboring words So our argument all along is that guideline was intended to provide enhancements for robberies of depository institutions where account holder funds are taken Where do you get the depository concept? I beg your pardon? Where do you get the depository concept as the limiting factor? It comes from both, number one, looking at the function of the post office with account holders and box holders Where they park their property there And from the other types of situations that are unlike a depository institution that are found in the other guideline I see that my time for now is expended You're not through, you still have a little time left, but you can come back on rebuttal You can come back on rebuttal for the time left Okay, thank you Your return to Chicago may be a little calmer than last week I hope so, thank you May it please the court, my name is Keith Alexander, I represent the United States Community financial's core function, its only purpose, is to provide financial services to its customers I don't think there's any dispute about that The record was clear that community financial offered a wide array of financial services And nothing more It cashed checks for businesses and individuals, it offered short term loans It provided ATM machines for people to access cash It deposits money on debit cards that are FDIC insured Bill paying services, money transfers So the only services that it offered was financial services And so when Anthony Cook robbed community financial, he was quite clearly robbing a financial institution As one of my colleagues likes to say, I think we have your point, Counselor Okay, thank you How much money did they get away with? $337,100 That's how much they took Was there some recovery, or did they catch him, or what happened? They eventually arrested him, it was sometime after the robbery So he got away with all the money Him and his co-actors did, yes So it was a loss of $337,000 That's correct So why do you think, Mr. Alexander, the guidelines have this as an aggravator for robbery? Well, a number of courts have said that the purpose of this enhancement Was to punish more severely those businesses that would be targets of robberies Because of the high amount of cash that it tends to hold on to Okay It's a little hard, let's compare, let's say an off-track bedding parlor Or a supermarket that has a few ATMs around, or something like that We see a lot more cash taken from those kinds of operations than from a typical bank robbery That is true, I think, for using your example of ATM machines There are some courts that said that the financial institution enhancement still would apply to them Because they're taking the property of the bank And certainly there are other businesses that are robbed that you identify In which they could take a lot of cash That doesn't mean that They wouldn't have gotten this much cash if they didn't have somebody inside, would they? They did have somebody inside here, the teller was one of the co-actors This doesn't depend on government insurance of the deposits, does it? No, it doesn't Okay, so I guess I'm just In tracing the evolution, really kind of in the early years of the guidelines This seems to have wavered back and forth a good deal with banks and financial institutions Or presume the amount of loss is $2,500 early on At least that much But it's a little hard to find a unifying rationale Behind this enhancement at this point Other than just we want to punish it more severely Which is rather tautological Well, I understand your point I think you're right, the early guidelines, the application notes Said that this was the purpose of this enhancement Was because these businesses tend to have a lot of cash on hand And thus are targets of robberies, or hot targets of robberies And so the guideline writers may have been wanting to deter a little bit more Those who would choose these businesses to rob Or to punish them a little bit more I think that's sort of what we're left with But certainly the text of this enhancement Would apply to a business like this, and the district court didn't err in doing it Just because, yes, I think you're right There are other businesses that have a lot of cash on hand But they just chose that financial institutions are ones that often do have a lot of cash on hand And that was certainly the case here Where they took over $300,000 from this institution And the appellant says that the limiting characteristic is that it's a depository function Because the enhancement also applies to post offices I don't think that works for a number of reasons But even if we were to assume that that somehow informs the definition of a financial institution The depository function of a post office is much like a money transfer Which is what community financial provided You go to the post office, you deliver your mail, and it's delivered to somebody else Community financial takes people's money and transfers it to somebody else It's much more like a money transfer than depositing your money into an account that you can later withdraw from The appellant cites community futures versus worth Boolean And I think that is instructive here Because the test that this court used in that case Was what was the core function of the business The question there was whether a precious metal dealer Was a financial institution under the Right to Financial Privacy Act And while it was true that these precious metal dealers offered financing to its customers The court found that that was just ancillary to its business It just was meant to facilitate the sale of gold and silver and other commodities that it sold That its core function was to sell precious metals Here, the core function of the business was financial services To offer financial services, that's all it did This answers, likewise, the constitutional challenge that the appellants raised in their supplemental briefs This is an as-applied test The question then is whether a reasonable person under these circumstances would have notice That their conduct would be at risk if they were to rob this business And for all the reasons that I've said The name of the business, the services that it offered Certainly a reasonable person would be put on notice that he was about to rob a financial institution This court does not need to remand that question The record is complete The legal briefs are before this court While it is true that Earl Burke came in after the sentencing I don't think the court needs to remand for the district court to answer that question in the first instance Given the completeness of the record And the fact that this has been briefed fully here Finally, just briefly, the other challenge that the appellants raised in their briefs Is that there's an impermissible double-counting with regard to the physical restraint In other words, that the same conduct results in more than one enhancement Or that the enhancement is a necessary element of the offense But that argument was explicitly foreclosed by this court's decision in the United States versus Vizcarro Which held that double-counting, so-called double-counting, is permissible Unless a specific guideline expressly says otherwise The appellant has no answer to Vizcarro There is no impermissible double-counting here The district court appropriately calculated the guidelines And this court should affirm the court's below-guidelines sentence here Unless the court has any other questions, I would rest on my briefs And ask that the court affirm the district court's sentence Thank you, Counselor I'd like to address at least two points Number one, Your Honor, Judge Hamilton raised, well, where does this depository idea come from? I would offer this If the court looks at the Smith case, which actually is relied upon For part of the arguments provided by the government The Smith case is cited there That case will take you to the early history of Guideline 1.3 The early history of that guideline is that it applied the language It was not financial institutions and post offices It was banks, banks and post offices That's where the concept of depository institution, I would argue Is kind of infused in this concept of what this guideline was intended originally And continuing on to cover So I offer that in response to your question, Your Honor The second point I'd like to make is in reference to the argument That, well, community financial services offered a wide array of financial services It's kind of an all-purpose financial services center Well, the difficulty in this particular case And this could actually be a basis for a very narrow ruling for this court In my client's favor The particular facts in this case are that in the plea agreement The only reference factually to the nature of this business Is in document 35 in the record, which is the plea agreement at page 3 In which it characterized the only function of this business as check cashing At that location The day before sentencing, the government walked in with a website printout Indicating that this business, which does business in several states at numerous locations Also has the capability to provide this wide array of other services But that was never introduced either at the sentencing That this particular location did anything other than check cashing And it certainly wasn't the basis of the plea I see my time is up. Thank you. Thank you, counsel. Thanks to both counsel And the case is taken under advisement You were appointed in this... Mr. Thompson, you're appointed in this case? Yes. Thank you very much for your service. Thank you.